Case No. 24-1192, Paul Cook v. Warren Screw Products Inc. Argument not to exceed 15 minutes per side. Mr. Charron, you may proceed for the appellant. Good morning, and may it please the Court, my name is Austin Strauss, and I represent the plaintiff appellant in this action, Mr. Paul Cook. I apologize if at any point in time during the oral argument I may clear my throat. I'm recovering from a cold, so I beg the Court's indulgence on that. The central focus of this appeal as it relates to the District Court determination of summary judgment is focused on whether or not Mr. Cook was disabled or not under the ADA. And specifically, whether it was under the definition of the ADA as amended in 2008, which expands upon the category of what qualifies as a disabled person. The original framework that we look under this is the McDonnell-Douglas Burden-Shifting Framework. And that original framework, as explained in the Texas Department of Community Affairs v. Burdeen, that's 450 U.S. 248, says that that burden is not an onerous one. It's a minimal standard to meet. Unfortunately, since the case of Toyota manufacturing in 2002, a Supreme Court case wherein the idea of the more permanent or long-term disability is needed, and that's 53 U.S. 184, 2002, that has given the understanding that the ADA, there needs to be some sort of long-term permanence to a disability. However, specifically, congressional intent and the EEOC, when approving and pushing through the amendment in 2008, the ADAA, wanted to expand upon that definition of what constitutes a disability and specifically state that the duration of it is not automatically indicative of whether or not a person is disabled or not. We're talking about two weeks here? We're talking about two weeks for his employment, Your Honor. So how long did the disability go on? The issue continued for a couple months afterwards. If my memory serves me correctly, it continued until about February or March of the next year. So it wasn't until February or March that he wanted to come back? No, it was not until February or March that the issues were more resolved and under control. He had wanted to work. There was no, there's nothing in the record that shows in any affirmative testimony from him that he just wanted to be on unemployment and didn't work. The note, the reason that he was off of work is that he had a doctor's note stating that until October 11th of that year that he shouldn't come to work at that time. They were still evaluating. Until October 11th, but from October to March. He had already been terminated. But it seemed like he, I mean, he, maybe I'm wrong, I didn't read in the record that he was saying that he couldn't work as far back as October. Right, he's not saying that he was completely prohibited from working in any way, shape, or form since that. Then how is he disabled? Well, the disability goes to some of the job functions that, for the job that he was in at that time, necessarily being the route driving. That's the primary focus of what he couldn't complete. The accommodation that he was essentially needing was to be nearer to a bathroom due to the bowel issues that he was having. You can imagine that, well, an inconsistent delivery schedule, if a delivery is two and a half hours away, that's not exactly a way to accommodate him, even if there's a bathroom at the facility two and a half hours away. Yes, Your Honor. Isn't the primary problem here that your client just doesn't meet the statutory definition of disability? I mean, he has a stomach bug, a common problem for many people in the workplace. It might have caused a little bit more trouble for his employer, given that he was supposed to be driving a truck. But I fail to see how a stomach bug that is common to everybody rises to the level, or to most people at some point or another, rises to the statutory definition of disability. And that, thank you, Your Honor, goes to the expanded definition under the ADAA. That's 29 CFR Section 1630.2 J1IX. And that, in conjunction with Hoskins v. Oakland County, specifically focused that the disability itself is an expansive definition, and the primary focus needs to be not only on its duration or the temporary nature of the disability, but on the actual effect that it has on living one's individual life. Is that to be considered on an ongoing rather than a temporary basis? Correct, but obviously we don't get the benefit of looking at it in hindsight 2020, but that issue continued far after his employment was already terminated by the Defense Matters Act. How does the regulation you mentioned differ from the statutory definition? It's just an amendment on the statutory, so it's expanding upon it. The original ADAA definition is what was cited in the appellee's brief. Well, I know, but what's different? It specifically states . . . And if it's different, what would we do with that, given that it's a regulation? It's perhaps helpful interpretation. Yeah, there's a case that I found in preparing for today, and I apologize that it was not put . . . I'm really actually asking you factually, what is there about this case that puts your client's stomach difficulties into the statutory definition? It's due solely to that expanded definition that's under it, because in the section that I mentioned, it focuses more on what the actual effect of the claimed disability is. What are the exact words? I can bring that up, Your Honor. I apologize, I don't have it offhand. So, in the section that I quoted or cited to earlier, it states specifically the six-month transitory or part of the transitory minor exception regarded as coverage in Section 1630.15F does not apply to the definition of disability or the actual disability prong in this section. The effects of an impairment lasting or being expected to last fewer than six months can be substantially limiting within the meaning of this section. And it's specifically stating in Section II as well, is that an impairment is a disability within the meaning of a section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. So while Your Honor is correct in saying that most people, yes, can suffer from a stomach bug, clearly Mr. Cooks was of a different variety, and it substantially limited him in a way that most other people do not have the same limitations. What was the substantial limitation? If you can't be away from a bathroom for more than an hour and a half to two hours, I would say that that's a substantial limitation on the ability to walk around, go get things from the grocery store, make other errands. And how long did that condition last? As I stated earlier, I believe that that had been resolved by February of the next year, so approximately about three and a half to four months. And the case that I was mentioning earlier that I found that kind of explains why this change in definition is so important for our understanding of disability, going from the ADA to the amendment, comes from the Third Circuit, actually, Morgan v. Allison. I'm confused by the way you're wording this. You're saying the reg amended the statute somehow? Yes, so the ADA was an amendment passed. It was an amendment passed by Congress in 2008 to explain and further define the definition under the ADA. So the reg is amending another reg, I take it. Yes, and the EEOC is signing on and explaining further why this amendment is a more expansive understanding. Is that amendment cited in your brief? I looked at the table of authorities and I didn't see a statutory. It is not, Your Honor. And I've been flipping through your brief page by page and I haven't found it yet either. It is not. So this is a new theory for argument? Yes, Your Honor. But as I was mentioning in that case, the court there specifically had to deal with the difference between the ADA definition. What case are you talking about? This was the Morgan v. Allison Crane rigging LLC. It's from the Third Circuit. It was decided this year. And the case number is 231747. Is that in your brief? It was not, Your Honor. Is there anything in your brief? Yes, there were plenty of authorities cited in the brief, but these were what I thought was persuasive. It's a little hard for us to prepare for argument if what you're arguing now is not in your brief. No, I understood. It's more of an explanation of what was already included in our brief, that we had already spoken in our brief that the temporary nature of his disability was not dispositive under the case law. We should have cited to the amended definition from the ADAA, and I beg the Court's apologies for that as well. Well, I mean, but what was the argument that you made in the district court then? Essentially that he met the standard. We tried to differentiate the case of, and I cannot pronounce the first name, but Hedricka. That's 4555. Tried to explain that as well as referencing to Milholland v. Summer. Yeah, but that case was about notice or something, as I recall. Right, and that was in relation to the argument. What did you say about the temporary nature of this disability to the district court? That's what I'm wondering. We stated down in—I'm trying to find the page you're on. I apologize. Well, I mean, I take it if you didn't cite authorities to us, you did not cite them to the district court. No, the authorities that we found were not presented to the district court. So you're talking mostly about Hedricka and Milholland. Milholland and Shields from the Ninth Circuit, yes. Those are the authorities that we relied on at oral argument, and we expounded upon the idea that the temporary nature was not an automatically determinative. It's an element of determining a disability, but it's not the determinative factor. Thank you, Your Honor. Okay, thank you. You'll have your rebuttal time. Counsel? Good afternoon. May it please the Court. Jeff Gerrish on behalf of Warren Screw Products. As difficult as it may be for the Court to respond to something that's not been briefed, it's even harder, I think, for Appelee Counsel. I was looking in his brief at the same time. Judge Gibbons, you were, and I didn't see anything either, so I was glad that counsel conceded that it wasn't in there because I thought I missed something. Every time I have a discrimination case of any sort, I'm always amazed at the number of cases that are out there. There's, like, thousands, almost maybe 10,000. There's tests, there's elements, the McDonnell-Douglas test, all these thresholds. Are you aware of the reg? I'm sorry? Yeah, regs, right. Well, are you aware of the reg that he was saying? I'm not, I'm not, Your Honor. Okay, do you, well, okay.  Do you only, do you only Based on what he said about the idea that the period of time is not, I suppose, as dispositive as it would have been. I don't know if you have a reaction to that. And by the way, I'm curious, do you agree that the length of time that's relevant here is something like four months? Is that what we're looking at? No. I mean, he was terminated three weeks after he started, and I think that's the snapshot in time that should be the focus. And he wasn't, and what I was going to say at the beginning is, I'm sorry. I think that an employer can't cut off a disability claim by firing somebody after two weeks and saying, oh, it's temporary disability. Of course. And then the person is disabled for another, whatever, years. But that doesn't get you out of liability, right? Agreed, agreed. So I guess ultimately, it doesn't matter what the focus is on for the time period, because he wasn't disabled. He didn't have a disability. He didn't have anything that substantially affected his . . . any major life activity, as the district judge corrected. Well, I . . . He never . . . they never argued it. He was close to a bathroom for twenty-four hours, I mean, or whatever, every two hours, whatever it is. I mean, why is that not . . . why does that not limit your ability to do a lot of fairly substantial life activities? Well, I mean, he didn't point to anything. Part of the problem is, he never made any argument in the trial court brief that that did. And so what we said is, we didn't . . . in our summary judgment brief, we said, this doesn't substantially limit any major life activity. In response, they said nothing. Which is different from substantially limiting his ability to do your particular job. Exactly. Exactly. And which brings me to another point, and Judge Edmonds found it unnecessary to reach this. But he also has to be able to perform the job. I mean, what I was going to say at the beginning is, sometimes it's helpful to just take a step back . . . and look at what is Congress trying to prohibit here. What Congress is prohibiting with this statute is discrimination against someone who has a disability . . . but is still able to do the job, either with or without a reasonable accommodation. That is in no way, shape or form, what's going on here. He didn't have a disability and he couldn't do the job. And, he says that he could do some parts of the job. He could work in the shop, where he didn't have to make deliveries. That's a little bit like hiring a waitress who says, I can work in the back. I can't wait tables, but I can do some other things now and then. We cited the EEOC versus Ford case that says, you have to be able to do the essential parts of the job. That, he couldn't do. So, he wasn't able to do the job and that is setting aside the fact that he had no disability. Judge Nalbandian, the best I can do in response to your question is focus on the definition. Sometimes the definition works, even when you . . . or it can't be met, even when you have someone who has a difficult situation. Everybody can sympathize. He's got to use the bathroom frequently, but it doesn't substantially impact any major life activity. That's the hurdle that he never even tried to reach in the trial court briefing . . . And, he really hasn't even tried in his appellate brief either, which is why I think he's shifted focus today. I think Judge Edmonds got it exactly right. Mostly, what he's focused on . . . Was he deposed? Was that part of the summary judgment record? He was deposed, yes. Did he have a declaration or an affidavit that said anything about his . . . No, what he said though, in his deposition, he specifically was asked, have you ever held yourself out as disabled? And, he said, no, I'm not disabled. And, I get maybe he doesn't understand, but the point is . . . This is not the type of disability that the statute is aimed at. And, I think Judge Edmonds got that right. This isn't a disability. And, the transitory nature of it, defeats his real argument, which in the briefing has been that he was regarded as disabled. And, his argument is basically, they thought he was disabled, and so they terminated him. But, Ciara Kane, she was our company rep. She was deposed, and I think her debt transcript is Exhibit 19, or Exhibit 9. She said, we didn't terminate him because he wasn't coming to work. We got the doctor's note. He couldn't come, but everything that he did and said, indicated that he didn't want to return. And, she goes through it on page 43 and 44 of her deposition. She talks about how he was short with her on the phone. He was apathetic. Mr. Shelton said the same thing. He complained about having to work Saturdays. He then left the keys and the gas card in the company, which suggested to the company, he didn't want to return. So, that was what they believed. Now, he may argue that they were wrong on that, but that's not disability discrimination. That's, maybe at most, an incorrect call on whether he really wants to work here. Every indication he gave was that he didn't. So, he doesn't have a disability. He wasn't qualified to perform the job anyway. And, he also argued in the brief, again, a failure to accommodate. That fails because he never made a reasonable request for an accommodation at all. And, in fact, Warren Screw did offer him the accommodation to work a limited shift. They even said a very truncated shift to make deliveries in the morning. You can make deliveries in the morning and then work in the shop in the afternoon. And, he turned that down. He wouldn't do that. So, there wasn't even a failure to offer a reasonable accommodation, which is another reason that that claim failed. Did they sort of, I mean, it's not perfectly clear, but if you say he made a request for a toilet in the truck, did they ever discuss that, you know, we can't put a toilet in a small truck? I don't think it was discussed. I think he was kidding. And, I think that was the understanding. I don't think there was actually. I'm not an expert, but if it's not a giant semi, you usually don't get a toilet in the truck. Right. Yeah, I think that was. I think he was kidding. In his deposition testimony, that's what it seems like. They weren't able to do that. That's not something that they could have done. And, he's never made any argument that that was the accommodation that he required in order to do this job. He basically said, I can't do the job. That's essentially what he was saying because he had this transitory issue. And, then the only other point I would make in terms of the regulation, and I'm flying blind a little bit, but I would be, the regulation can't amend the statute as Judge Nalbandian alluded to. And, I would be very surprised without having it in front of me if the regulation said that every, you know, condition that lasts even for a couple weeks or even a few months, like a stomach bug, can qualify or does qualify as a disability. I would find that shocking. I don't think that's what the regulation says. But, again, I'm flying blind a little bit. Let me go back to that question because I'm curious whether we're looking at four months, two weeks. What is the relevant? I know you said two weeks, but that can't, I mean, I'm not sure that's right if it went on beyond that. I guess I'm just not sure. I don't remember what the record exactly reflected. But, is it possible that it's four months? I suppose. Yeah, if he says he had the condition for four months, I guess, but he was terminated. And, the relevance of the transitory nature of the condition is in the part of the statute that talks about being regarded as disabled. There's a specific part of the statute, and this is in our brief, that says a transitory condition doesn't qualify for being regarded as disabled. That's the only relevance that I know of. And, I take it back. Judge Edmunds' opinion talks about a case, I think it was a district court case, that said the transitory nature of a condition mitigates against it constituting a disability. And, I think that would apply whether it's two weeks or four months. It's still transitory. It's not like a missing limb or blindness or deafness or something like that. A stomach bug that lasts even as long as four months is still transitory, and that mitigates against it being a disability. But, again, the main argument as to why it's not a disability is that it doesn't meet the definition in the statute. If there are no other questions, I think that's all I have, but I certainly would be happy to answer any questions if the Court has any. Thank you. Thank you, Your Honors. Roberto? I'll be brief. Just to address the regarded as disabled argument, I think what has been stated at the summary judgment as well as stated here is that we didn't regard him as disabled, but we offered him an accommodation anyway. And, I think that when you're looking at that in the light most favorable to us as the non-moving party at summary judgment, is they're saying just randomly they're offering someone an accommodation, but they don't regard that individual as disabled at that point in time. Further, I know that there was issues . . . So every employer who offers any kind of accommodation is automatically acknowledging that the person is disabled? No, I don't think that it's an automatic sort of thing, but I think there is some nuance to that. If an employer is taking action, their actions are instructive on what their belief is. Well, it would seem to me that it would be much more likely that they were just trying to get some benefit from having this employee and paying him, presumably. I don't know if he was getting paid or not during that period of time, but that they were trying to get some benefit from an employee who wasn't coming to work under the terms that had been agreed upon. And, if I were looking at the facts as presented in the light most favorable to the defendant, then I would also push for that position. But, I think that when you switch that narrative of focus and look for a moment in saying that our client is saying he's disabled or saying they regarded him as disabled, a jury could, on a factual determination, make that inference that they did offer accommodation. A jury could, but not if he's not disabled as a matter of law. Correct, Your Honor. I was just addressing the regarded as argument. And, to the other arguments that were very briefly mentioned about the gas card and him not wanting to work, I think I detailed pretty well in our factual layout of our original brief why there were some questions and issues with that sort of version of facts. The gas card and keys were left there, and our client understood that he left them there because they were the only set that could be used for that truck. And, he knew that he was going to be out under his doctor's note for a little bit longer. He did not want to prohibit use of that truck. Further, when you look at Mr. Shelton's deposition testimony, and I included the specific snapshot in there, he, before ever contacting HR about finding out Mr. Cook's situation, went and looked in the drawer, the very drawer, that Mr. Cook said he put it in there. How else would Mr. Shelton, who stated in his deposition that I did not talk to Mr. Cook about where he put this stuff, know where it was unless there was some understanding that, okay, hey, if you're going to be out, this is where we put this so that we still have access to our only means of using to do these deliveries. If there are no other questions. Okay, counsel. Thank you. Thank you for your time. Thank you both for your briefs and argument. The case will be submitted.